```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JOSEFA MUNOZ, et al.,

                    Plaintiffs,           04 Civ. 1105 (JGK)

       - against -                        MEMORANDUM OPINON
                                          AND ORDER
CITY OF NEW YORK, et al.,

                    Defendants.
_____
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Josefa Munoz, brings this action on behalf of herself and purportedly as the Administratix for the estate of Valentine Munoz, her late husband.[1] The plaintiff alleges false arrest under state and federal law and a state law claim for intentional infliction of emotional distress. She has sued the City of New York and Police Officers Jeffrey Millenbach, Ruben Ortiz, Michelle Guy, and Lisa Stokes (collectively the "defendants" and "Individual Defendants" referring to the Police Officer defendants).[2] The defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1] The Third Amended Complaint refers to Mr. Munoz as "Valentine" Munoz and "Valentin" Munoz. This Court uses the spelling from the caption of that complaint.
[2] Defendants Jamie Keenan and Empire Home Care Services were previously dismissed from this action.

I.

The following facts are undisputed unless otherwise noted. As of August 11, 2003, the plaintiff lived with her husband, who was suffering from a variety of medical conditions, including diabetes, prostate cancer, and a heart condition. (Def.'s Rule 56.1 St. ¶¶ 1-2; Pl.'s Rule 56.1 St. ¶¶ 1-2.) Due to his medical condition, Mr. Munoz was receiving services from a visiting nurse in August, 2003. (Def.'s Rule 56.1 St. ¶ 3; Pl.'s Rule 56.1 St. ¶ 3.) On August 11, 2003, Jamie Keenan provided nursing services to Mr. Munoz at his apartment and determined that his blood sugar was "very high" and that Mr. Munoz had a gangrenous toe. (Def.'s Rule 56.1 St. ¶¶ 7-8; Pl.'s Rule 56.1 St. ¶¶ 7-8.) At approximately 3:00 p.m., Ms. Keenan called 911 without seeking Ms. Munoz's permission. (Def.'s Rule 56.1 St. ¶¶ 12, 17; Pl.'s Rule 56.1 St. ¶¶ 12, 17.) Shortly thereafter, two police officers, Michelle Guy and Lisa Stokes, arrived at the Munoz apartment. (Def.'s Rule 56.1 St. ¶¶ 30-31; Pl.'s Rule 56.1 St. ¶¶ 30-31.)

According to the computer-assisted dispatch report (the "CAD report") generated by EMS, the first EMS team, EMTs Casey Ennis and Barbie Joe Geller, arrived at the scene shortly after 3:00 p.m. (Def.'s Rule 56.1 St. ¶¶ 18-19; Pl.'s Rule 56.1 St. ¶¶ 18-19.) Ms. Keenan told Geller and Ennis about Mr. Munoz's medications and medical history and informed them that Mr.

2

Munoz's blood sugar was extremely high and that his toe was gangrenous. (Def.'s Rule 56.1 St. ¶¶ 41-43; Pl.'s Rule 56.1 St. ¶¶ 41-43.)

After attempting to convince Mr. and Mrs. Munoz that Mr. Munoz needed to go to the hospital, the EMTs called the online medical control doctor, Dr. Silverman, to report a possible refusal of medical assistance and to determine whether Mr. Munoz was permitted to refuse medical treatment. (Def.'s Rule 56.1 St. ¶¶ 20, 50; Pl.'s Rule 56.1 St. ¶¶ 20, 50.) Dr. Silverman was unable to determine Mr. Munoz's capacity to refuse medical treatment, and ascribes such inability to the language barrier between himself and Mr. Munoz, despite the presence of an AT&T interpreter, and to Mr. Munoz's hearing loss. (Def.'s Rule 56.1 St. ¶¶ 56-59; Pl.'s Rule 56.1 St. ¶¶ 56-59.) EMTs Geller and Ennis called for a supervisor, and EMS Lieutenant Trudell Hiller responded and arrived at the Munoz apartment, and spoke with Mr. Munoz. (Def.'s Rule 56.1 St. ¶¶ 61, 62, 64; Pl.'s Rule 56.1 St. ¶¶ 61, 62, 64.)

At some point after their arrival, Officers Guy and Stokes requested a translator, after which Police Sergeant James Beatty and Officer Ruben Ortiz arrived at the Munoz apartment. Officer Ortiz speaks Spanish, and was the only Spanish speaking officer at the scene. (Def.'s Rule 56.1 St. ¶¶ 70-73; Pl.'s Rule 56.1 St. ¶¶ 70-73.) At 4:39 p.m. the CAD report indicates that the

police dispatcher noted an uncooperative female at the location, and five minutes later a second EMS team, EMTs Jennifer Barton and Nilda Santiago, was assigned to the Munoz apartment. (Def.'s Rule 56.1 St. ¶¶ 25-26; Pl.'s Rule 56.1 St. ¶¶ 25-26.) The CAD report indicates that the first EMS team was en route to the hospital with one patient at 4:52 p.m., and the second EMS team was en route to the hospital with one patient at 5:08 p.m. (Def.'s Rule 56.1 St. ¶¶ 28-29; Pl.'s Rule 56.1 St. ¶¶ 28-29.)

Ms. Munoz was not handcuffed by the police on August 11, 2003, and was never told she was under arrest. (Def.'s Rule 56.1 St. ¶¶ 81-82; Pl.'s Rule 56.1 St. ¶¶ 81-82.) However, the plaintiff testified that for some period of time she was held down on her bed, by the two policewomen, and that she was prevented from leaving the room. (See, e.g., Aff. in Opp. Ex. B at 155:16-18, 160:7-8, 161:24-162:3, 165:1-12). She also alleges that this restraint resulted in visible bruising for which she went to the hospital and that she complained about this restraint at the time. (See, e.g., Aff. in Opp. Ex. B at 155:22-23, 161:24-162:13, 165:18-20, 166:15-18, 167:9-12, 185:4-186:4, 187:13-17). Ms. Munoz testified at her deposition that she does not know the name of any police officer who was in her home or who allegedly touched her physically on August 11, 2003, except for "Santiago." (Def.'s Rule 56.1 St. ¶¶ 89-90; Pl.'s Rule 56.1 St. ¶¶ 89-90.) Police Officer Jeffrey Millenbach's

role on August 11, 2003, consisted primarily of waiting around at the apartment in case he was needed. (Def.'s Rule 56.1 St. ¶ 91; Pl.'s Rule 56.1 St. ¶ 91.)

II.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify

those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir.1994).

III.

A.

As an initial matter, the claims purportedly brought on behalf of the estate of Valentine Munoz are **dismissed without prejudice**. The plaintiff concedes that Ms. Munoz has not been

appointed as the Administratrix for the estate of Mr. Munoz and that no administrator has been appointed for Mr. Munoz. As a result, Mr. Munoz is not a party to this action and Ms. Munoz lacks standing to pursue any claims on his behalf. Barrett v. United States, 689 F.2d 324, 331 (2d Cir. 1982); see also Harrison v. Harlem Hospital, et al., 2007 WL 2822231, at *2 (S.D.N.Y. Jan. 21, 2003). Therefore, all claims purportedly brought on behalf of Mr. Munoz are dismissed without prejudice.

B.

The plaintiff brings a federal claim against the City of New York under 42 U.S.C. § 1983 for false arrest. To impose Section 1983 liability upon a municipality, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injuries. See Monell v. Dept. of Social Servs., 436 U.S. 658, 694 (1978); see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992); Bullard v. City of New York, 240 F. Supp. 2d 292, 299-300 (S.D.N.Y. 2003). The plaintiff must demonstrate that the municipality was the "moving force" behind the injuries alleged. Brown, 520 U.S. at 404; Monell, 436 U.S. at 692. The alleged policy does not need to be contained in an explicitly adopted rule so long as the unlawful practices of city officials are so "persistent and widespread

. . . as to constitute a custom or usage with the force of law." Sorlucco, 971 F.2d at 870-71 (internal quotations omitted).

The defendants argue that the plaintiff has failed to proffer sufficient evidence to create a material issue of disputed fact as to whether the alleged violation of federal law occurred as a result of any custom, policy, or practice of the City. The plaintiff has not responded to this argument in the submission opposing the motion for summary judgment and has proffered no evidence on this issue. Therefore, the federal claim against the City is **dismissed**.

C.

Similarly, with respect to the Individual Defendants, the only federal claim asserted in the Third Amended Complaint by the plaintiff in her individual capacity is a claim brought pursuant to 42 U.S.C. § 1983 based on an allegation of false arrest in violation of the Fourth Amendment. The plaintiff claims that she was unlawfully restrained at her apartment and was forced to go to the hospital against her will. (Third Amended Complaint ¶¶ 21, 25-30.)

A false arrest claim under Section 1983 resting on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, "is substantially the same as a claim for false arrest under New York law." Weyant v.

Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Under New York law, "a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." Id. (citations omitted). "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment." Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting); see also Weyant, 101 F.3d at 853 (describing false arrest as "a species of false imprisonment"). In the absence of a formal arrest, a seizure under the Fourth Amendment occurs where a "reasonable person would have believed that he was not free to leave." INS v. Delgado, 466 U.S. 210, 215 (1984) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

"[I]n order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). Furthermore, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Back v. Hastings On Hudson

9

Union Free School Dist., 365 F.3d 107, 122 (2d Cir. 2004) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).

i.

With respect to the plaintiff's allegation that she was forced to go to the hospital, the plaintiff has not offered evidence that any of the Individual Defendants were personally involved in her transportation to the hospital. Sergeant Beatty, who the plaintiff alleges was the officer that "ordered Ms. Munoz taken to the hospital," is not named as a defendant. (See Pl.'s Mem. 11.) At argument, the plaintiff conceded that the only involvement that the named police officer defendants may have had in Ms. Munoz's transportation to the hospital was escorting her to the ambulance, and that there is no evidence in the record establishing which named officers, if any, escorted Ms. Munoz. (Hr'g Tr. 14:3-15, Jan. 24, 2008.) Therefore, to the extent the plaintiff is asserting claims against the Individual Defendants based on her transportation to the hospital, these claims are **dismissed.**

ii.

The plaintiff has also failed to offer evidence sufficient to raise a material issue of fact as to the personal involvement of Officers Millenbach and Ortiz in any alleged unlawful

restraint.  The evidence that alleges that a "police officer" or "police officers" or "they" touched or restrained Ms. Munoz is insufficient.  (See, e.g., Aff. In Opp'n Ex. B at 35:22-25, 161:24-25, 164:24-25, 166:12-167:18, 173:1-8, 185:5-7; Ex J. at 33:8-18, 34:18-22, 40-43, 45, 106:18-24.)  The plaintiff does not point to any evidence in the record that establishes what role, if any, Officers Ortiz and Millenbach had in the plaintiff's restraint.  Indeed the plaintiff specifically admits that Officer Millenbach's role consisted primarily of waiting around the apartment in case he was needed.  (Def.'s Rule 56.1 St. ¶ 91; Pl.'s Rule 56.1 St. ¶ 91.)  On the basis of this evidence, no reasonable jury could conclude by a preponderance of the evidence that Officers Millenbach or Ortiz were personally involved in the alleged constitutional deprivation.  Their presence at the apartment is not sufficient to defeat summary judgment.  See Travis v. Village of Dobbs Ferry, 355 F. Supp. 2d 740, 753 (S.D.N.Y. 2005) (dismissing claims against officers where there was no evidence that they had any personal involvement in the arrest).  Furthermore, the plaintiff has not pleaded claims for supervisory liability or failure-to-intervene, and the evidence offered by the plaintiff does not support such claims.  See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996) ("We have construed personal involvement for these purposes to mean direct participation, or failure to remedy the

alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."); Rendely v. Town of Huntington, No. 2:03-cv-03805, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006); Malsh v. Garcia, 971 F.Supp. 133, 140 (S.D.N.Y. 1997); see also Alvarez v. Coughlin, No. 94-CV-985, 2001 WL 118598, at *2 (N.D.N.Y. Feb. 6, 2001).

### iii.

In contrast, the plaintiff has offered sufficient evidence to raise a material issue of fact with respect to the personal involvement of Officers Guy and Stokes in the alleged unlawful restraint. At several points in her deposition testimony, the plaintiff testified that she was physically touched by the two policewomen at the scene. The plaintiff's testimony includes statements that the two policewomen grabbed and held the plaintiff, tied down her arms, used their legs to squeeze her legs, stabbed their nails into the her skin, and pulled her out of the bedroom and into the living room. (Aff. In Opp'n Ex B. at 155:16-18, 160:7-8, 162:11-13, 165:8-14, 167, 187:1-2, 19021-191:5; Ex. C at 138:16-18.)[3] She also alleges that she begged the officers not to take her husband away, but they would not

---

[3] The plaintiff also relies on the deposition testimony of Sergeant Beatty to establish the personal involvement of Officer Guy in the alleged restraint of Ms. Munoz. (Pl.'s Aff. in Opp'n Ex. D at 91:7-92:14, 93:15-96:23, 128:16-130:22.)

12

let her stand up when they took her husband away. (Aff. In Opp'n Ex B. at 160:5-162:3.)

Officers Guy and Stokes appear to have been the only female police officers at the scene. While the plaintiff's deposition testimony does raise some question as to the plaintiff's ability to differentiate between police officers and EMT personnel, she repeatedly states that the two female policewomen physically restrained her, and that there were only two female policewomen at the scene. (Aff. In Opp'n Ex B. at 141:16, 142:6-7, 150:11-5.)[4] Considering the evidence in the light most favorable to the plaintiff, there remains a disputed issue of material fact as to whether Officers Guy and Stokes were personally involved in the alleged constitutional deprivation. The evidence offered by the plaintiff also raises triable issues of fact with respect to whether Ms. Munoz's belief that she was not free to leave was reasonable and whether or not the officers had sufficient justification for the alleged confinement.

iv.

The defendants argue that to the extent the plaintiff has established personal involvement, summary judgment is

---

[4] The plaintiff admits that she does not know the names of any of the officers who were in her apartment or who touched her physically on the date in question, except for "Santiago." (Pl.'s Rule 56.1 St. ¶¶ 89-90.) None of the Individual Defendants are named "Santiago." But the plaintiff has provided sufficient testimony to identify Officers Guy and Stokes as the individual officers who allegedly restrained her, even if she did not know their names.

13

appropriate on the grounds of qualified immunity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.  The unlawfulness must be apparent." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal quotation marks, ellipses, and brackets omitted)).

Qualified immunity is an effective shield when government officers of reasonable competence could disagree on whether the conduct at issue was legal.  See Malley v. Briggs, 475 U.S. 335, 341 (1986); see also Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).  The Court of Appeals has held that "[s]ummary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant shows that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law."

O'Bert v. Vargo, 331 F.3d 29, 37 (2d Cir.2003) (internal quotation marks omitted); see also Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001).

"[C]laims for false arrest and false imprisonment stem from an individual's right to be free from arrest without probable cause," which was a clearly established right at the time of the alleged violation. Bradley v. Village of Greenwood Lake, 376 F. Supp. 2d 528, 532 (S.D.N.Y. 2005) (citing Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997)). Therefore, Officers Guy and Stokes are entitled to qualified immunity only if, construing the evidence in the light most favorable to the plaintiff, their actions were not objectively unreasonable at the time they were taken. Based on the record before the Court and drawing all inferences in the plaintiff's favor, the Court could not find that no reasonable jury could conclude that Officer Guy or Stokes acted in an objectively unreasonable manner with respect to the restraint of Ms. Munoz. As discussed above, the plaintiff has offered evidence raising material issues of fact with respect to the extent, duration, and severity of, and the justification for, the restraint. Because there are conflicting versions of the events "the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense," and therefore summary dismissal based on

qualified immunity is not appropriate.  Hurlman v. Rice, 927 F.2d 74, 82 (2d Cir. 1991).

For the reasons discussed above, the plaintiff's federal claims against Officers Millenbach and Ortiz are **dismissed**.  The motion for summary judgment with respect to Officers Guy and Stokes is **granted** with respect to Ms. Munoz's transportation to the hospital and **denied** with respect to the alleged restraint of the plaintiff in the apartment.

D.

In the plaintiff's opposition papers, the plaintiff argues that she was subjected to the use of excessive force.[5]  The plaintiff has not pleaded a claim of excessive force in the Third Amended Complaint.  In general, plaintiffs are not permitted to raise new theories of their case in opposition to a motion for summary judgment.  Rendely, 2006 WL 5217083, at *6 (citing Agri-Mark, Inc. v. Niro, Inc., 233 F. Supp. 2d 200, 207 (D. Mass. 2002)).  Furthermore, prior to filing the Second Amended Complaint, the Court signed an order reflecting the parties' agreement that the plaintiff would be allowed to join Jamie Keenan and Empire Home Care as defendants, but that the plaintiff would not state any additional causes of action against the City defendants, which plainly included both the

---

[5] The original complaint asserted a claim of excessive force, but this claim was not included in the amended versions of the complaint.

16

City and the Individual Defendants, who are employees of the City. (Smith Reply Decl. Ex. AA.) Because the First Amended Complaint did not contain a claim of excessive force, the plaintiff is now precluded from raising a claim of excessive force.

E.

The plaintiff has also asserted state law causes of action for false arrest and intentional infliction of emotional distress. A state law claim for false arrest is substantially similar to a false arrest claim under Section 1983. Weyant, 101 F.3d at 852. Therefore, for the reasons discussed above, the defendants' motion for summary judgment seeking dismissal of the state law claims for false arrest is **granted** with respect to the claims against Officers Ortiz and Millenbach and **denied** with respect to Officers Guy and Stokes based on their alleged false arrest of the plaintiff.[6] Because the state law claims for false arrest remain against Officers Guy and Stokes, the motion for

---

[6] The defendants argue that the Individual Defendants are entitled to qualified immunity under New York law. "New York law . . . does grant government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." Jones v. Parmley, 465 F.3d 46, 63 (2d Cir. 2006) (citing Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 364 (2d Cir. 2004)). This standard is similar to the federal qualified immunity standard. See Allen v. City of New York, No. 03 Civ. 2829, 2007 WL 24796, at *24 (S.D.N.Y. Jan 3, 2007). Therefore, genuine issues of material fact exist relating to qualified immunity under state law. See Jones, 465 F.3d at 64; Simpkin v. City of Troy, 638 N.Y.S.2d 231, 232 (3d Dep't 1996) ("Clearly, without a factual resolution of the sharply conflicting versions of these events, it is not possible to determine whether defendants are qualifiedly immune.").

summary judgment is **denied** with respect to the state law claim for false arrest against the City based on a theory of respondeat superior.  See L.B. v. Town of Chester, 232 F. Supp. 2d 227, 239 (S.D.N.Y. 2002) ("Unlike cases brought under § 1983, municipalities may be liable for the common law torts, like false arrest and malicious prosecution, committed by their employees under the doctrine of respondeat superior.").  The defendants do not dispute that Officers Guy and Stokes were acting within the scope of their employment when the alleged acts occurred.

The state law claims for intentional infliction of emotional distress should be dismissed with respect to all of the defendants.  To maintain a claim of intentional infliction of emotional distress under New York law, the plaintiff must establish "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. New York Post Co., 612 N.E.2d 699, 702 (1993)).  The requirements are rigorous and difficult to satisfy.  As the New York Court of Appeals explained: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

18

utterly intolerable in a civilized community." Howell, 612 N.E.2d at 702 (internal citation and quotation marks omitted). In this case, the plaintiff has not offered sufficient evidence for a reasonable jury to conclude that the Individual Defendants' actions were "so outrageous in character . . . as to go beyond all possible bounds of decency. . . ." Id.

Furthermore, under New York law, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." Thomas v. County of Putnam, 262 F. Supp. 2d 241, 251 (S.D.N.Y. 2003) (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998)) (alteration in original). This would provide an independent ground for dismissal, because the plaintiff's claim of intentional infliction of emotional distress is based on conduct encompassed within the plaintiff's claim of false arrest.

CONCLUSION

For the reasons explained above, the claims purportedly brought on behalf of Valentine Munoz are **dismissed without prejudice**. The defendants' motion for summary judgment with respect to the Section 1983 claims brought in the plaintiff's individual capacity is **granted in part and denied in part**. The

19

defendants' motion for summary judgment with respect to the state law claims is **granted in part and denied in part**.

*SO ORDERED.*

Dated: New York, New York
       February 16, 2008

                                    _____
                                    John G. Koeltl
                                    United States District Judge